Roy A. Katriel (SBN 265463)
THE KATRIEL LAW FIRM
12707 High Bluff Drive, Suite 200
San Diego, CA 92130
Telephone: (858) 350-4342
Facsimile: (858) 430-3719
e-mail:rak@katriellaw.com

*Counsel for Plaintiff Marshall Block*

# UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

MARSHALL BLOCK, On Behalf of Himself
And All Others Similarly Situated,

               Plaintiff,

    v.

eBAY, INC.

         Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)

**No.  C 11-06718 CRB**

**PLAINTIFF'S OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS
CLASS ACTION COMPLAINT**

Date:      April 27, 2012
Time:      10:00 a.m.
Judge:    Hon. Charles R. Breyer
Trial Date:  Not yet set

**TABLE OF CONTENTS**

INTRODUCTION AND SUMMARY OF ARGUMENT……………………………………1

I.    eBAY'S WHOLESALE RELIANCE ON *TWOMBLY* AND *IQBAL* IS UNAVAILING……..….2

II.   PLAINTIFF STATES AN ACTIONABLE BREACH OF CONTRACT CLAIM……………..3

      A.  eBay's Conduct Breaches The User Agreement……………………………..……….4

      B.  eBay's Proposed Contract Interpretation Is Without Merit…………………………….6

      C.  At Most, eBay's Argument Raises A Factual Question As To Its Intent………………….8

III.  THE INTENTIONAL INTERFERENCE CLAIM IS PROPERLY PLED………………….8

      A.  Plaintiff Has Properly Pled His Intentional Interference Claim………………………..…8

      B.  eBay's Arguments Against The Intentional Interference Claim Are Unavailing……………9

            1.  Plaintiff Has Pled Intentional Disruption Of Plaintiff's Economic Relationship…..…….9

            2.  eBay's Conduct Is Actionable As Intentional Interference……………………….…….10

            3.  The Separate Section 17200 Claim Also States Independent Wrongful Conduct……....12

IV.   PLAINTIFF PROPERLY STATES A CLAIM UNDER CALIFORNIA'S UCL……………12

      A.  Reliance And Particularity Are Not Required For The Bulk of Plaintiff's UCL Claim…....13

      B.  To The Extent Necessary, Plaintiff Has Pled Reasonable Reliance And Deception………..13

      C.  To The Extent Necessary, Plaintiff Satisfies Rule 9(b)'s Pleading Requirements………….14

V.    THE UNJUST ENRICHMENT CLAIM IS NOT SUBJECT TO DISMISSAL………………15

CONCLUSION………………………………………………………………………15

# TABLE OF AUTHORITIES

**Cases:**

*American Marine Paint v. Nyno Line*,
    70 Cal.App. 415 (1924)……………………………………………….……5

*Argent Classic Arb. Fund v. Countrywide Fin.*,
    2008 WL 8166001 (C.D. Cal. Nov. 13, 2008)…………………………...……14-15

*Ariba, Inc. v. Rearden Commerce, Inc.*,
    2011 WL 4031140 (N.D. Cal. Sept. 8, 2011)………………………...……………13

*Ashcroft v. Iqbal*,
    556 U.S. 662, 129 S. Ct. 1937 (2009)……………………………….…….passim

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)………………………………………………….…….passim

*Blix Street Records, Inc. v. Belbard*,
    2005 WL 6572031 (Calif. Super. Oct. 12, 2005)…………………………………12

*BriteSmile, Inc. v. Discus Dental, Inc.*,
    2005 WL 3096275 (N.D. Cal. Nov. 18, 2005)………………………...…………12

*City of Chicago, IL v. eBay, Inc.*,
    2009 WL 5184016 (N.D. Ill. Dec. 21, 2009)………………………………………7

*City of Chicago, IL v. eBay, Inc.*,
    2008 WL 4294118 (N.D. Ill. Filed Aug. 8, 2008)…………………...………...…7

*CRST Van Expedited, Inc. v. Werner Enterprises, Inc.*,
    479 F.3d 1099 (9th Cir. 2007)………………………………………………12, 13

*Goddard v Google, Inc.*,
    640 F. Supp.2d 1193 (N.D. Cal. 2009)……………………………...……………8

*Guz v. Bechtel Nat. Inc.*,
    24 Cal. 4th 317 (2000)………………………………………………………8

*Hepp v. Lockheed Calif. Co.*,
    86 Cal.App.3d 714 (1978)…………………………………………………8

*Hilderman v. Enea TekSci, Inc.*,
    551 F. Supp.2d 1183 (S.D. Cal. 2008)………………………………………..………12

*In re FEMA Trailer Formaldehyde Products Liab. Litig.*,
    2008 WL 5217594 (E.D. La. Dec. 12, 2008) ………………………………..………14

*Khoury v. Maly's of California, Inc.*,
    14 Cal.App.4th 612 (1993) ……………………………………………..…………11

*Kline v. Mortgage Elec. Sec. Sys.*,
    2010 WL 6298271 (S.D. Ohio Dec. 30, 2010) ………………………………………...2

*Korea Supply Co. v. Lockheed Martin Corp.*,
    29 Cal.4th 1134 (2003) ……………………………………………...1, 9, 10, 11-12

*L. Byron Culver & Assocs. v. Jaoudi Indus.*,
    1 Cal. App.4th 300 (1992) ………………………………………………………...5

*Lewis v. Taylor*,
    2010 WL 3785109 (S.D. Ohio Sept. 21, 2010) …………………………………..2, 3

*Mazur v. eBay Inc.*,
    2008 WL 618988 (N.D. Cal. Mar 4, 2008) ……………………………………………15

*Quantum Assocs., Inc. v. Symbol Techs., Inc.*,
    2002 WL 1735356 (N.D. Cal. Jul. 12, 2002) ………………………………1, 10, 11

*Roscigno v. DeVille*,
    1992 WL 884708 (Va. Cir. Ct. Jun. 1, 1992) …………………………..………4-5

*State of Wisconsin Investment Bd. v. Peerless Sys. Corp.*,
    2000 WL 1805376 (Del. Ch.  Dec. 4, 2000) ………………………………………...4

*Steinberg v. American Bantam Car. Co.*,
    76 F. Supp. 426 (M.D. Pa. 1948) ………………………………………..…………5

*Stevenson Real Estate Srvcs., Inc. v. CB Richard Ellis Real Estate Srvcs., Inc.*,
    138 Cal. App. 1215 (2006) ……………………………………..…………12

*Trimec, Inc. v. Zale Corp.*,
    1990 WL 103647 (N.D. Ill. Jul. 2, 1990) ………………………………………14

*Zollar v. Smith*,
    710 S.W.2d 155, 157 (Tex. App. 1986) ……………………………..………5

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Treatises and Restatements:**

2 David A. Drexler et. al., Delaware Corporation Law and Practice § 25.09[2] (2009)…………………5

Restatement.2d Torts, § 766B………………………………………………………...…………9

## INTRODUCTION AND SUMMARY OF ARGUMENT

Seduced, as many defendants mistakenly are, by the language of *Twombly* and *Iqbal*, Defendant eBay, Inc. reflexively cites those opinions. Neither *Twombly* nor *Iqbal*, however, advance eBay's argument. Far from amounting to implausible legal conclusions, the allegations in the Class Action Complaint ("CAC") are either uncontroversial recitation of events, or allegations of eBay's conduct that even eBay does not dispute. Neither *Iqbal* nor *Twombly* provide eBay with the relief it seeks.

eBay's argument for dismissal of the breach of contract claim (Count II) is also unavailing. Without disputing that it fails to abide by the terms of its User Agreement, eBay contends that the document, which eBay itself titled a "User Agreement," does not create contractual promises enforceable against eBay, but merely is a unilateral recitation by eBay of its own limitation of liability, which is unenforceable by Plaintiff or any other eBay user. No plausible reading of the User Agreement supports this creative reading. That reading also is inconsistent with the position eBay has taken in other litigation. The fact is that when eBay allied itself with bidders and kept their actual bids secret from eBay sellers like Plaintiff, choosing to transmit to the sellers a lower bid than what the bidders had committed to paying for the item being sold, eBay violated its agreement to remain uninvolved in the transaction and not to act as an agent for any of the parties. Because eBay's failure to live up to this agreement resulted in the seller obtaining less than the bid submitted by the bidder, the seller (here, Plaintiff) has been shortchanged as a direct result of eBay's breach.

The intentional interference with prospective economic advantage claim (Count I) is also not subject to dismissal. Citing *Quantum Assocs., Inc. v. Symbol Techs., Inc.*, 2002 WL 1735356, at *1 (N.D. Cal. Jul. 12, 2002) (*cited in* Dft's Br. at 10:21-22 and at 12:15-17) eBay's principal argument is that Plaintiff has not alleged conduct beyond a breach of contract, which cannot lead to liability for an intentional interference claim. That argument does not survive the California Supreme Court's subsequent binding decision in *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134 (2003). Under *Korea Supply*, the allegedly interfering conduct will be considered tortious if it violates conduct made actionable independently by another statute or by the common law. Here, eBay's violation of its User Agreement is proscribed and actionable under the common law as a breach of contract. Since *Korea Supply*, the Ninth Circuit and California courts have held that either a breach of contract or a

Section 17200 violation, both of which are pled here, provide the requisite independent wrongful conduct for an intentional interference with prospective advantage claim.

Plaintiff's Unfair Competition Law ("UCL") claim (Count III) is also properly pled. Plaintiff has alleged the requisite underlying unlawful conduct to state a claim under Section 17200 of the California Business and Professions Code. eBay also is wrong in asserting that Plaintiff failed to plead reasonable reliance on eBay's assurances. He plainly did. (*See* CAC, ¶ 51). Plaintiff's "deceptive conduct" UCL claim also satisfies Rule 9(b)'s pleading requirements.

Count IV, which prays for an order of restitution (CAC, ¶ 57), also is proper. Although some California courts have rejected the label "unjust enrichment," California law does allow a claim for restitution, which Plaintiff has pled in the alternative event that he is found not to have a valid contract.

For all the foregoing reasons, as more fully detailed below, eBay's motion should be denied.

## I.   eBAY'S WHOLESALE RELIANCE ON *TWOMBLY* AND *IQBAL* IS UNAVAILING.

In *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the United States Supreme Court clarified the pleading standards set forth in Federal Rule of Civil Procedure 8. The Court held that, despite the Rule's mere "notice pleading" requirement, a plaintiff could not state a claim by merely parroting the statutory elements of a claim. *Iqbal*, 129 S. Ct. at 1951; *Twombly*, 550 U.S. at 557. Nor could a plaintiff plead as purported "allegations of fact" statements that were mere conclusions of law, and in that manner urge that a court accept those "allegations of fact" as true at the pleading stage. *Iqbal*, 129 S. Ct. at 1949. To state a claim for relief under the Rule, a plaintiff was required to present a claim for relief that was plausible, even if not probable, as opposed to one that was merely possible. *Id*.

At the same time, neither *Iqbal* nor *Twombly* require evidence to be presented in support of a pleading. Allegations of fact (as opposed to conclusions of law couched as fact) are still accepted as true, and cannot be rejected. *See Kline v. Mortgage Elec. Sec. Sys.*, 2010 WL 6298271, at * 12 (S.D. Ohio Dec. 30, 2010) ("Even after *Twombley,* 550 U.S. 554, and *Iqbal*, this Court is not free to reject purely factual allegations contained in a complaint."); *Lewis v. Taylor*, 2010 WL 3785109, at *3 (S.D. Ohio Sept. 21, 2010) ("The federal rules still provide for notice pleading, not fact pleading, and *Iqbal* and *Twombly* did not rewrite the rules. What *Iqbal* and *Twombly* do require is that plaintiffs provide

factual allegations from which a court may plausibly infer a cause of action. . . . Evidentiary support is simply not necessary at this stage in the proceedings.").

Like eBay, many defendants have reacted to *Iqbal* and *Twombly* by reflexively citing them in Pavlovian fashion to assail any complaint in a manner that Judge Shadur of the United States Court of Appeals for the Seventh Circuit has criticized as amounting to "defendants often attempt[ing] to use *Iqbal* and *Twombly* as 'a kind of universal 'get out of jail free' card'" *Id*. (quoting *Madison v. Taylor* oral argument comment of Shadur, J.,). Here, that criticism is particularly apt, as eBay's motion is rife with references to *Iqbal* and *Twombly,* without regard for what is actually pled in the CAC.

Ironically, resort to *Twombly* and *Iqbal* is particularly inappropriate here because the conduct eBay is alleged to have engaged in, Proxy or Automatic Bidding, is one eBay admits to.  *See* Dft's Br. at 2:8-3:23.  eBay also blames Plaintiff because "[h]e does not plead any facts showing he actually sold anything on eBay." Dft's Br. at 1:20-21. In fact, Plaintiff pled at least five times that he offered for sale and sold numerous items on eBay.  *See* CAC, ¶¶ 1, 5 ,31, 46, 54.  He is not required to provide evidentiary support or "facts showing he actually sold" these items.  At other items, eBay's zeal to invoke *Twombly* and *Iqbal* blinds it to the actual allegations of the CAC, as when it charges that Plaintiff "does not allege the he actually relied on the two statements in the User Agreement." *Id*. at 1:23.  In fact, Plaintiff alleged exactly that.  *See* CAC, ¶ 51.  And, contrary to eBay's conclusory assertions, Plaintiff *did* plead how he personally was harmed by eBay's conduct. *See* CAC, ¶ 40.

When the *Twombly* and *Iqbal* vitriol in eBay's brief is stripped away, it is apparent that all the requisite facts for each of the claims pled by Plaintiff are properly alleged.

## II.   PLAINTIFF STATES AN ACTIONABLE BREACH OF CONTRACT CLAIM.

eBay cannot and does not dispute that in a document that eBay drafted and entitled "User Agreement," eBay made the following two representations:

> You will not hold eBay responsible for other users' content, actions, or inactions, items they list, or for their destruction of allegedly fake items.  You acknowledge that we are not a traditional auctioneer.  *Instead, our sites are venues to allow anyone to offer, sell, and buy just about anything, at anytime from anywhere in a variety of pricing formats and locations such as stores, fixed price formats and auction style formats. We are not involved in the actual transaction between buyers and sellers*.

1   Ex. 1 to CAC, at p. 4 of 7 (emphasis added); and:

2       No agency, partnership, joint venture, employee-employer or franchiser-
    franchisee relationship is intended or created by this Agreement.

3   *Id.* at p. 5 of 7.

4       Nor does eBay dispute that, despite its representations in the User Agreement, it actually has put

5   in place an Automatic Bidding System pursuant to which it actually *is* involved in the transaction

6   between buyers and sellers.  eBay's Automatic Bidding System, formerly called Proxy Bidding,

7   intercepts the bid placed by a bidder on an auction, and keeps that bid hidden from the eBay seller.

8   Instead of transmitting that bid, as one would expect a neutral venue owner to do who was unaffiliated

9   with any party to the transaction, eBay submits to the seller only as much of the bidder's bid as is

10   necessary to keep that bidder in the lead, provided his bid amount has not been exceeded by another

11   bidder.  CAC, ¶ 17-25. Thus, as eBay explains and touts to its bidders, even though a bidder may bid

12   $15.00 for an item being auctioned, eBay will intercept that bid and relay it to the seller as only a bid

13   for $12.50 if doing so will still keep that bidder in the lead. *Id.*, at ¶ 21.  If the auction ends at that point,

14   the same bidder who agreed to pay $15.00 for the item, will obtain the item for $12.50 because eBay

15   kept hidden and never transmitted the $15.00 bid to the seller. *Id.* at 21-22.

16       **A.**    **eBay's Conduct Breaches The User Agreement.**

17       eBay previously called its bidding scheme, Proxy Bidding. (CAC, ¶¶ 18, 19).  This is an apt

18   name, for rather than transmitting the actual bid placed by the bidder as a neutral carrier or venue (like

19   say, Western Union) would be forced and expected to do, eBay treats the bid as an instruction from the

20   bidder for eBay to act as a proxy holder on behalf of the bidder to seek to obtain for the bidder the best

21   possible deal necessary to win the item without exceeding his actual bid amount.  Trouble is—this turns

22   eBay into an agent for the bidder, as all courts to have considered the issue have unremarkably

23   concluded, and it involves eBay in the sales transaction, thereby violating eBay's representations in the

24   User Agreement.  *See State of Wisconsin Investment Bd. v. Peerless Sys. Corp.*, 2000 WL 1805376, at

25   *14 (Del. Ch.  Dec. 4, 2000) ("The proxy relationship is 'a particular sort of agency' where the

26   stockholder is the principal and the proxy agent is just that, the agent to vote the shares."); *Roscigno v.*

27   *DeVille*, 1992 WL 884708, at *4 (Va. Cir. Ct. Jun. 1, 1992) ("Under general principles of law, a proxy

28

creates an agency relationship governed by agency law."); *Zollar v. Smith*, 710 S.W.2d 155, 157 (Tex. App. 1986) ("The proxy agreement is viewed as creating the relationship of principal and agent and is for the most part governed by principles of agency law."); *Steinberg v. American Bantam Car. Co.*, 76 F. Supp. 426, 439 (M.D. Pa. 1948) ("a proxy holder would fall within one of the rare categories known to the Law of Agency as a universal agent."); 2 David A. Drexler et al. *Delaware Corporation Law and Practice* § 25.09[2] (2009) ( "[A] proxy is the creation of an agency.").

Attempting to make much of the fact that its Automatic Bidding system increases bids automatically, eBay incorrectly cites California case law as holding, in eBay's words, that "[t]he hallmark of an agency relationship" (Dft's Br. at 9:27-28) is that the principal is authorized "to exercise a degree of discretion in effecting the purpose of the principal." *L. Byron Culver & Assocs. v. Jaoudi Indus.*, 1 Cal. App.4[th] 300, 304 (1992).  But the cases do not hold as much, and instead merely state that a principal *may* provide an agent with discretion.  California law has long recognized that a principal may just as well withhold discretion from his agent.  *See American Marine Paint v. Nyno Line*, 70 Cal.App. 415, 422 (1924) ("The rights of the principal will not be changed nor the capacity of the agent enlarged by the fact that the agent is not invested with a discretion, but simply acts under an authority to purchase a particular article at a specified price, or to sell a particular article at the market price.").

eBay also tries to downplay its departure from its User Agreement by disingenuously arguing that, "plaintiff fails to allege any facts detailing how the Automatic Bidding system actually constitutes eBay's improper 'involvement' in the transaction.  Regardless whether a bidder uses the system or places an individual manual bid, the bidder is still the person who 'places his bid for the item.'" Dft's Br. at 8:10-13.  That is beside point.  Of course, it is always the bidder that places a bid.

The key difference, however, is that when a bidder places a $15.00 bid and eBay truly remains uninvolved in the actual transaction (as it is required to do), then upon the close of the auction, that successful bidder will be bound to purchase the item for $15.00.  eBay underscores this, warning would-be bidders that, "[a] bid on eBay is considered a contract, and you're obligated to purchase the item." CAC, ¶ 16 and at Ex. 2 to CAC (quoting eBay webpage).  By contrast, by employing its Automatic Bidding System, eBay secures for the same bidder who placed the same $15.00 bid on the same item, the ability to purchase the item by only paying to the seller $12.50 or some lesser amount,

provided that no higher bid has been placed by anyone else and ***even though the bidder still placed a bid of $15.00.***  *See* CAC, ¶ 21, and Ex. 4 to CAC.  Put differently, eBay's involvement in the transaction to act as a proxy holder for the bidder shortchanges the seller by keeping secret from the seller the true amount the bidder committed to paying for the item.[1]

### B.  eBay's Proposed Contract Interpretation Is Without Merit.

eBay next argues that despite its representations in its User Agreement that it will remain uninvolved in the transaction between seller and bidder, and that it does not act as an agent for any party, these are not enforceable promises but are mere unilateral expressions to limit eBay's liability.  *See* Dft's Br. at 6:18-20.  That creative reading of a document that eBay itself drafted and entitled User Agreement is not supported by the text.  Far from merely announcing eBay's own policies or the terms under which it will provide its services, the document was intended to and did convey contractual rights on both parties.  For starters, the introductory paragraph of the User Agreement document makes clear that it is intended as a "contractual agreement:"

> If you reside outside the United States, ***you are contracting with*** one of our International eBay companies: In countries within the European Union, ***your contract is with*** eBay Europe S.a.r.l.; In all other countries, ***your contract is with*** eBay International AG.

Ex. 1 to CAC, at p. 1 of 1 (emphasis added).

The User Agreement also contains a lengthy section entitled "Legal Disputes," that sets forth the enforcement options, including arbitration, available to either party, where eBay provides that:

> *you and eBay* agree that we will resolve *any* claim or controversy at law or equity that arises out of this Agreement or our services (a "Claim") in accordance with one of the subsections below.

*Id.* at p. 6 of 7.

Rather than viewing the contract as a whole, eBay seeks to carve out certain language—notably, the language containing the representations it is alleged to have breached—from being part of the

---

[1] For this reason, the California Attorney General's *ex parte* advisory opinion that eBay is not a yacht "broker" because it performs no negotiation, is irrelevant to the separate determination whether its proxy bidding system breaches its contractual duty to remain uninvolved in the transaction and not to act as an agent.  Even as to the "broker" question, the Attorney General conceded that eBay's use of a Proxy Bidding system made this the "most difficult determination."  *See* Ex. C to Chapman Decl. in Supp. Of eBay's Req. for Jud. Notice, at p. 2 of 3.  Of course that advisory opinion is not binding here.

enforceable contract.  But eBay's attempt to relegate these representations to mere unenforceable limitations of liability is unsupportable. For starters, while the User Agreement contains a Limitation of Liability section, the representation that no agency is formed is not found in that section.  Instead, the "no agency" assurance was drafted by eBay elsewhere in a wholly separate section of the contract entitled, "No Agency," and that section contains no language purporting to limit eBay's liability.  *See* Ex. 1 to CAC, at p. 5 of 7.  Nor would it be unreasonable for a user contracting to sell an item on eBay to read that language and reasonably expect that, by providing that the User Agreement was not creating an agency relationship between eBay and any party, eBay would not align itself with the bidders to act on their behalf against the seller.

As for the representation that eBay would remain uninvolved in the transaction between seller and buyer, eBay's attempt to couch it as a mere limitation of liability that is not enforceable by any eBay user does not fit.   There is simply no "limitation" of liability offered by that language.

Equally damning to eBay's *post hoc* interpretation is that it is at odds with eBay's representation in other litigation. In *City of Chicago, IL v. eBay, Inc.*, 2009 WL 5184016, (N.D. Ill. Dec. 21, 2009), the question presented was whether Chicago could force eBay collect sales tax as a reseller.  In arguing against that classification, eBay made the following representation as to its duty to remain a neutral, uninvolved venue with no agency relationship to the parties:

> In order to become properly registered, eBay states that it **was required to certify** that it "does not act as an agent of users who sell items on its website, and acts only as a venue for user transactions."

*Id*. at *3 (emphasis added).

The same representation was made in eBay's brief to the Northern District of Illinois, where eBay argued that, "[i]n order to register as an 'Internet Auction Listing Service' eBay *was required to certify* (among other things) that it 'does not act as the agent of users who sell items on its website, and acts only as a venue for user transactions.' *City of Chicago, IL v. eBay, Inc.*, 2008 WL 4294118 (eBay's Mem. In Supp of Mtn to Dismiss) (N.D. Ill. Filed Aug. 8, 2008) (emphasis added).

Being "required to do" something is the precise opposite of merely limiting one's liability.  At the very least, eBay's admission in other litigation that, being an uninvolved venue with no agency relationship in the transaction was a standard *it was required to adhere to*, raises a factual question as to

whether the inclusion of that same language in eBay's User Agreement was intended as an affirmation of a legal duty that eBay agreed to undertake, or merely a limitation of liability.

### C.  At Most, eBay's Argument Raises A Factual Question As To Its Intent.

Aside from the unequivocal language of the User Agreement to which eBay's conduct does not conform, eBay faces an additional hurdle in arguing that it did not intend the language to amount to an enforceable contractual promise.  Under California law, whether a defendant's stated policy forms a contractually enforceable promise is a question of fact, without regard to whether it was drafted as a contractually enforceable promise.  *See Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 344 (2000) ("When an employer promulgates formal personnel policies and procedures in handbooks, manuals, and memoranda disseminated to employees, a strong inference may arise that the employer intended workers to rely on these policies as terms and conditions of their employment, and that employees did reasonably so rely."); *see also Hepp v. Lockheed Calif. Co.*, 86 Cal.App.3d 714, 719 (1978) ("question of fact whether an employer's [written] policy of preferential hiring for its laid-off employees was to be considered an implied contractual promise on which its employees could reasonably rely.").  To the extent that eBay even raises a cognizable argument that the contractual language that it drafted as part of a contract was not intended by eBay to be relied upon or enforceable by Plaintiff, California law holds that that intent is a factual question and, hence, not suitable for resolution on a motion to dismiss.[2]

### III.   THE INTENTIONAL INTERFERENCE CLAIM IS PROPERLY PLED.

### A.  Plaintiff Has Properly Pled His Intentional Interference Claim.

Contrary to eBay's conclusory arguments, Plaintiff has properly pled the elements of an intentional interference with prospective economic advantage claim.   By pleading that he has offered for sale and sold items through the traditional eBay auctions, Plaintiff has pled the existence of an economic relationship between the bidders on his items and himself.   eBay itself endorses this view because its website cautions would-be bidders that, "[a] bid on eBay is considered a contract, and

---

[2]  eBay's reliance on *Goddard v Google, Inc.*, 640 F. Supp.2d 1193 (N.D. Cal. 2009) is misplaced. *Goddard* merely held that Google's imposition of criteria for advertisers to abide by did not make unrelated recipients of these ads intended third-party beneficiaries. *Id.* at 1201.  It has no application to this case, where an actual party to the User Agreement is suing for a breach of a representation found within the Agreement to which it is a party.

1   you're obligated to purchase the item." CAC, ¶ 16; Ex. 2 to CAC.   It is also indisputable that eBay

2   knew of this economic relationship because Plaintiff's items were offered for sale through the eBay

3   website, the bids were placed on eBay's website, and before either of these transactions could happen,

4   both Plaintiff and the bidders had to register with eBay.  *See* CAC, ¶¶ 8, 9.       The CAC also details

5   at length how eBay acts to disrupt this relationship by intercepting the bid placed by the bidder, keeping

6   that amount hidden from the seller (here, Plaintiff), and instead, transmitting a lower bid amount to the

7   seller, thereby shortchanging the compensation for the item that the seller would receive from the

8   bidder for the item, but for eBay's involvement.  *See* CAC, ¶¶ 17-25; 35-40.  The CAC alleges that this

9   involvement assumed by eBay violates at least two representations made explicitly by eBay in its User

10  Agreement; namely, that it will not be involved in the transaction between seller and bidder; and that, it

11  will not act as an agent for any party.  *Id*. at  ¶¶ 10-11; Ex. 1 to CAC, at pp. 4, 5.  The resultant

12  economic harm, therefore, is straightforward—instead of receiving the amount of money that the

13  successful bidder actually bid, Plaintiff received a lesser amount that eBay's Automatic Bidding system

14  transmitted to him. *Id*. at ¶¶ 39-40.

**B.   eBay's Arguments Against The Intentional Interference Claim Are Unavailing.**

**1.   Plaintiff Has Pled Intentional Disruption Of Plaintiff's Economic Relationship.**

Plaintiff has properly pled that eBay's acts to disrupt the relationship between sellers like the

Plaintiff and bidders was "intentional" within the meaning of a tortious interference claim under

California law.  In *Korea Supply*, the California Supreme Court clarified that to qualify as an

"intentional" act to tortiously interfere with the plaintiff's prospective economic advantage, it is not

necessary for a "plaintiff plead and prove that the defendant acted with the specific intent, purpose, or

design to interfere with the plaintiff's prospective advantage. *Instead, we agree with the Restatement

that it is sufficient for the plaintiff to plead that the defendant "[knew] that the interference is certain or

substantially certain to occur as a result of his action." Id*. at 1156-57 (emphasis added) (quoting

Restatement.2d Torts, § 766B, cmt. d., p.22.).[3]  Here, that allegation is readily featured in the CAC

because the CAC attaches and quotes from eBay's webpage description of its Automatic Bidding

---

[3] Oblivious to this holding, eBay argues that Plaintiff fails to alleged "that the Automatic Bidding
system is 'designed' to disrupt plaintiff's relationships with third parties." Dft's Br. at 11:21-22.

system in which eBay touts to would-be bidders that, as a result of eBay's employment of the Automatic Bidding feature, a successful bidder could be required to only pay the seller $12.50 for an item for which the successful bidder had actually bid $15.00.  *See* CAC, at ¶¶ 21-22; Ex. 4 to CAC. The CAC also quoted and attached eBay webpages, in which eBay touted to would-be bidders that, as a result of the Automatic Bidding system, "you could pay significantly less [than your bid]." CAC, ¶ 24.

### 2.   eBay's  Conduct Is Actionable As An Intentional Interference.

Misreading outdated case law, eBay next argues that the tortious interference claim should be dismissed because all Plaintiff has alleged is a breach of contract, which cannot form the predicate for an intentional interference claim. *See* Dft's Br. at 12:9-19. eBay's argument is lifted from this Court's decision in *Quantum Assocs*. *See* Dft's Br. at 10:21-22; 12:15-18 (*citing Quantum Assocs*. as authority for argument). *Quantum Assocs.*, however was decided in 2002—nearly a full year before the California Supreme Court decided *Korea Supply*, in which it clarified California law on tortious interference with prospective economic advantage.

*Korea Supply* held that to gage whether the conduct pled amounted to intentional interference, the existence of a defendant's "improper motive" is irrelevant. *Korea Supply*, 29 Cal.4[th] at 1158. Rather, the conduct must be "independently wrongful," by which the Court explained:

> The tort of intentional interference with prospective economic advantage is not intended to punish individuals or commercial entities for their choice of commercial relationships or their pursuit of commercial objectives, unless their interference amounts to independently actionable conduct. We conclude, therefore, that an act is independently wrongful if it is unlawful, that is, *if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard*.

*Id*. at 1158-59 (internal citation omitted, emphasis added).

Here, the factually supported allegation that eBay violated its User Agreement supplies this proscribed conduct that is actionable by reference to determinable common law breach of contract standards.  eBay's liability for tortious interference does not turn on whether its injecting itself into the transaction between Plaintiff and bidders was improperly motivated, but rather is objectively ascertainable by reference to well established legal standards governing a breach of contract action. This is precisely what *Korea Supply* calls for.

*Korea Supply* also dooms eBay's reliance on *Quantum Assocs.* for the proposition that "the wrongful conduct, that is, the acts interfering with the relationship, must be more than a breach of contract." *Quantum Assocs.*, 2002 WL 173535 6, at \*2 (*quoted in* Dft's Br. at 12:14-15).  Indeed, that quoted language appears in *Quantum Assocs.*, but that decision was, in turn, quoting from and relying upon the California Court of Appeal's decision in *Khoury v. Maly's of California, Inc.*, 14 Cal.App.4th 612 (1993). Specifically, *Quantum Assocs.* quoted and relied upon the following language in *Khoury*:

> The sole alleged conduct of [the defendant] was the breach of contract to supply the ... products to plaintiff. The effect on [plaintiff's] customers (with whom defendant had no relations) and the damage to [plaintiff's] business were simply consequences of breach of contract. *If a contract plaintiff could plead in a conclusory way that the defendant <u>maliciously intended</u> to drive the plaintiff out of business, the tort of interference with prospective business advantage would be routinely pleaded in breach of contract cases.* Allowing such conclusory pleading would be contrary to the cautious policy of the courts about extending tort remedies to ordinary commercial contracts.

*Id.* at 618 (emphasis added), *quoted in Quantum Assocs.*, 2002 WL 1735356, at \*2.

The emphasized language underscores why eBay's argument fails.  *Khoury*, decided well before *Korea Supply*, was decided when California law still required "malicious or improper motive" as an element of a tortious interference claim.  For that reason, *Khoury* explained that pleading a breach of contract, without more, could not form the basis for a tortious interference claim, because merely alleging a contractual breach says nothing about whether the defendant "maliciously intended" anything. *Korea Supply*, however, renders all that discussion beside the point because it held that, contrary to the basis for *Khoury's* holding, California law does not require proof of improper motive for an intentional interference claim.

To underscore that it was changing the legal test away from improper motive to the inclusion of conduct that is objectively actionable under common law or statutory standards, *Korea Supply* made explicit its disapproval of lower courts that had held the opposite (such as, for example, *Khoury*):

> We need not in this case further define which sources of law can be relied on to determine whether a defendant has engaged in an independently wrongful act, other than to say that such an act must be wrongful by some legal measure, rather than merely a product of an improper, but lawful, purpose or motive. **To the extent that the lower courts have determined otherwise, these decisions are disapproved**.

*Korea Supply*, 29 Cal.4th at 1159, n.11 (emphasis added).

Not surprisingly, in the aftermath of *Korea Supply*, several California decisions have upheld intentional interference claims where the allegedly tortious conduct was a breach of contract. Among them, for example, *Blix Street Records, Inc. v. Belbard*, No. BC312118, 2005 WL 6572031 (Calif. Super. Oct. 12, 2005), cited *Korea Supply* and held as follows:

> *Plaintiff has adequately alleged an interference that is "unlawful by some other means." Plaintiff has alleged Defendant's settlement proposals constituted a breach of Defendant's own agreement with Blix, a breach and repudiation of Defendants' express warranties and indemnities and their implied obligations of good faith and fear dealing.*

*Id.* (emphasis added).

### 3.   The Separate Section 17200 Claim Also States Independent Wrongful Conduct.

Aside from his breach of contract allegations, Plaintiff also has alleged a separate claim under the UCL.  Post *Korea Supply*, the Ninth Circuit, as well as California state and federal courts are in accord that conduct allegedly violating the UCL suffices to state an independently unlawful wrong for purposes of an intentional interference claim. *See CRST Van Expedited, Inc. v. Werner Enterprises, Inc.*, 479 F.3d 1099, 1110 (9th Cir. 2007) ("CRST merely must allege that Werner's acts were unlawful for a reason other than that they interfered with CRST's prospective economic advantage. We have already concluded in Part IV that CRST validly alleged that Werner's acts violated the UCL. . . . Thus, CRST has adequately alleged that Werner's acts were unlawful for a reason other than that those acts interfered with CRST's prospective economic advantage."); *Hilderman v. Enea TekSci, Inc.*, 551 F. Supp.2d 1183, 1997 (S.D. Cal. 2008) (upholding tortious interference claim because "A violation of section 17200 can satisfy the requirement of an independently wrongful act."); *BriteSmile, Inc. v. Discus Dental, Inc.*, 2005 WL 3096275, at *5 (N.D. Cal. Nov. 18, 2005) (independent wrongful conduct pled where plaintiff "adequately pled claims for unfair competition"); *Stevenson Real Estate Srvcs., Inc. v. CB Richard Ellis Real Estate Srvcs., Inc.,* 138 Cal. App. 1215, 1224 (2006) (conduct violating § 17200 states independently wrongful conduct for tortious interference claim).

### IV.   PLAINTIFF PROPERLY STATES A CLAIM UNDER CALIFORNIA'S UCL.

Plaintiff states a cognizable UCL claim. Section 17200 makes actionable conduct that is unlawful, unfair, or deceptive.  The Ninth Circuit has confirmed that a claim of intentional interference

with contractual relations is a sufficient predicate for a UCL "unlawful business practice" claim. *See CRST*, 479 F.3d at 1107 ("We conclude CRST adequately alleged a violation by Werner of the UCL by alleging Werner engaged in an 'unlawful' business practice, to wit, intentional interference with existing contracts."); *see Ariba, Inc. v. Rearden Commerce, Inc.*, 2011 WL 4031140, at *11 (N.D. Cal. Sept. 8, 2011) (same). This is so, the Ninth Circuit explained, because "intentional interference with contract is a tortious violation of duties imposed by law." *CRST*, 479 F.3d at 1107. The same logic and result hold true with respect to claims of intentional interference with prospective economic advantage.

### A. Reliance And Particularity Are Not Required For The Bulk Of Plaintiff's UCL Claim.

eBay claims that Plaintiff failed to plead reliance, and to meet the requirements of Federal Rule of Civil Procedure 9(b). *See* Dft's Br. at 13:8-14:21. Neither an intentional interference, breach of contract, nor a UCL claim premised on this conduct requires a showing of reliance or anything beyond notice pleading. eBay's argument is irrelevant insofar as the UCL claim is based on the foregoing.

### B. To The Extent Necessary, Plaintiff Has Pled Reasonable Reliance And Deception.

To the extent that Plaintiff's UCL claim is also premised on eBay's deceptive conduct based on its misrepresentations and violations of California's False Advertising Law, he has satisfied the pleading requirements for these claims as well. Despite eBay's assertion that "plaintiff does not allege he relied on either statement," (Dft's Br. at 13:18), he explicitly has done so. *See* CAC, ¶ 51 ("Plaintiff reasonably relied on the representations and assurances contained in eBay's User Agreement."). This allegation of fact is far from implausible or conclusory. There is nothing unreasonable or implausible in an eBay user relying upon representations eBay made in its User Agreement, and that would govern the consequences of any action taken by the user or eBay in connection with his use of eBay's venue.

Plaintiff's allegation of reliance is buttressed by eBay's admonishment to him that, "[t]his Agreement sets forth the entire understanding and agreement between us with respect to the subject matter thereof." CAC, ¶ 13, and Ex 1 to CAC, at p. 7 of 7. Because eBay presented Plaintiff (and all other eBay would-be users) with the Agreement, and therein explicitly cautioned that the Agreement's terms were the only ones that Plaintiff should rely upon to the exclusion of any other representations made by eBay or others about the relationship between the parties, Plaintiff's allegation of reasonable reliance is sufficiently factually supported so as not to render it implausible within the meaning of *Iqbal*

or *Twombly*.  *See In re FEMA Trailer Formaldehyde Products Liab. Litig.*, 2008 WL 5217594 (E.D. La. Dec. 12, 2008) (plaintiffs satisfied "*Twombly* standards" for reliance element by pleading that there were "express factual representations upon which the claimant[s] justifiably relied"); *see also Trimec, Inc. v. Zale Corp.*, No. 86 C 3885, 1990 WL 103647, at *2 (N.D. Ill. Jul. 2, 1990) ("plaintiffs' fraudulent inducement claim is based on promises appearing in the written agreement approved by the City Council and therefore plaintiffs' reliance on these promises was not unreasonable.").

eBay feigns to be at a loss as to how Plaintiff could be deceived or misled by eBay's assurances in its User Agreement that it would remain uninvolved in the transaction between seller and bidders, and would form no agency relationship with any party, when other webpages somewhere on the eBay website tout the supposed attributes of eBay's Automatic Bidding system under which eBay does align itself with the bidders.  *See* Dft's Br. at 14:3-8.  But eBay misses the mark again.  The pertinent point is that, whatever may have been found on some other webpage deep within eBay's website, *in the User Agreement*, not only did eBay fail to disclose the workings of its Proxy or Automatic Bidding System, but it made the precise *opposite* assurance; namely, that it would remain uninvolved in the transaction between Plaintiff and bidders.  And, at the same time, eBay warned that the User Agreement contained "the entire understanding and agreement between us."  It is simply disingenuous for eBay to argue that its conduct was "fully disclosed" (Dft's Br. at 14:3), because notwithstanding the representations and admonitions found in eBay's User Agreement, had Plaintiff scoured eBay's website, he could have found a webpage that contradicted the representations eBay made in the User Agreement.

### C.  To The Extent Necessary, Plaintiff Satisfies Rule 9(b)'s Pleading Requirements.

To the extent that Plaintiff's UCL claim is based on fraudulently deceptive conduct, Plaintiff has properly met the pleading requirements of Rule 9(b).  Although that Rule imposes a heightened requirement above the bare notice pleading requirements of Rule 8(a),

> [I]t is important to bear in mind that Rule 9(b) does *not* require plaintiffs to list every single word on which they relied; nor does it require plaintiffs to give laborious details in contravention of Rule 8(a)'s short and plain statement standard. But plaintiffs must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong.

*Argent Classic Arb. Fund v. Countrywide Fin.*, 2008 WL 8166001, at *3 (C.D. Cal. Nov. 13, 2008).

Plaintiff has assuredly satisfied the mandates of Rule 9(b).  He has identified which specific representations were false (i.e., that eBay would remain uninvolved in the transaction between seller and bidder; and that, eBay would not act as an agent for either party).  *See* CAC, ¶¶ 10-11.  He has identified where those statements appeared, i.e. in eBay's User Agreement, upon which Plaintiff relied.  *See* Ex. 1 to CAC.  And he has described in lengthy detail how these representations were false (i.e., because its User's Agreement's representations to the contrary, eBay did become involve in the transaction and did act as a proxy or agent for the bidder by keeping his bid secret from the seller in a manner that would shortchange the seller and benefit the bidder).  CAC, ¶¶ 17-25; 35-40. This is more than sufficient to apprise eBay of the particular misconduct alleged to constitute the fraud charged.

## V.       THE UNJUST ENRICHMENT CLAIM IS NOT SUBJECT TO DISMISSAL.

eBay's attempt at dismissing Count IV also fails.  Although some California courts have held that "unjust enrichment" is not a properly recognized claim under California law, even those courts recognize that restitution does state a viable claim.  *See Fraley v. Facebook*, 2011 WL 6303898, at *23 (N.D. Cal. Dec. 6, 2011) ("unjust enrichment is not a cause of action, just a restitution claim.").  Plaintiff's claim, though labeled "unjust enrichment," seeks a "judgment of restitution."  *See* CAC, ¶ 57.  This Court has upheld claims, that though improperly labeled as "unjust enrichment," properly state a cognizable claim for restitution.  *See Mazur v. eBay Inc.*, 2008 WL 618988, at *14 (N.D. Cal. Mar 4, 2008) (upholding count labeled as unjust enrichment because "putting substance over form, this court holds that plaintiff may validly seek restitution damages independent of how it is labeled.").   Nor is Plaintiff foreclosed from asserting this claim because he pled a User Agreement. Rule 8(d) permits him to plead this claim in the alternative, particularly where eBay denies the existence of a contractual duty governing the conduct at issue.  *See* Fed. R. Civ. P. 8(d)(2).

## CONCLUSION

For all the foregoing reasons, eBay's motion to dismiss should be DENIED.  In the event the Court grants eBay's motion in any regard, Plaintiff respectfully seeks leave to appropriately amend.

Dated: March 12, 2012

Respectfully submitted,


_____/s/ Roy A. Katriel_____
Roy A. Katriel
THE KATRIEL LAW FIRM
12707 High Bluff Drive, Suite 200
San Diego, California 92130
Telephone: (858) 350-4342
Facsimile: (858) 430-3719
e-mail: rak@katriellaw.com

*Counsel for Plaintiff Marshall Block*